# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DAVID BROWN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. CIV-09-949-L |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

David Brown ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the Defendant Commissioner's final decision denying Plaintiff's applications for disability insurance benefits and supplemental security income payments under the Social Security Act. This matter has been referred to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B). Upon review of the pleadings, the record ("Tr.") and the parties' briefs, the undersigned recommends that the Commissioner's decision be affirmed.

## Administrative Proceedings

Plaintiff initiated these proceedings by filing his applications seeking disability insurance benefits and supplemental security income payments in April, 2005 [Tr. 56 - 58 and 350 - 352]. He alleged that a back injury, a major depressive disorder, and problems with his hands and his wrist resulted in pain and difficulties in concentration which became

disabling as of April, 28, 2004 [Tr. 63 - 64]. Plaintiff's claims were denied and, at his request, an Administrative Law Judge ("ALJ") conducted a March, 2007 hearing where Plaintiff, who was represented by counsel, and a vocational expert testified [Tr. 38 and 363 - 386]. In his May, 2007 decision, the ALJ found that while Plaintiff was unable to perform his past relevant work, he retained the capacity to perform other available work and, accordingly, was not disabled within the meaning of the Social Security Act [Tr. 15 - 27]. The Appeals Council of the Social Security Administration declined Plaintiff's request for review [Tr. 4 - 7], and Plaintiff subsequently sought review of the Commissioner's final decision in this court.

**Standard of Review**

This court is limited in its review of the Commissioner's final decision to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citations and quotations omitted). Nonetheless, while this court can neither reweigh the evidence nor substitute its own judgment for that of the ALJ, the court's review is not superficial. "To find that the [Commissioner's] decision is supported by substantial evidence, there must be sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion." *Bernal v. Bowen,* 851 F.2d 297, 299 (10th Cir. 1988) (citation omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* at 299.

**Determination of Disability**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.§§423(d)(1)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. §§404.1520(b)-(f), 416.920(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-752 (10th Cir. 1988) (describing five steps in detail). Under this sequential procedure, Plaintiff bears the initial burden of proving that he has one or more severe impairments. 20 C.F.R. §§ 404.1512, 416.912; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). Then, if Plaintiff makes a prima facie showing that he can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show that Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Turner*, 754 F.2d at 328; *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir. 1984).

**Plaintiff's Claims of Error**

Plaintiff first maintains that the Commissioner failed to meet his burden of proving that Plaintiff "retained the residual functional capacity for 'sustained performance of the physical-mental requirements of jobs.'"[1] [Doc. No. 12, p. 7]. Plaintiff further contends that his "residual functional capacity does not fit Medical-Vocational Guidelines." *Id.* at 7 - 8.

---

[1]Unless otherwise indicated, quotations in this report are reproduced verbatim.

Next, it is Plaintiff's argument that the "Commissioner's vocational expert evidence fails to show that [Plaintiff] can access jobs that exist in significant numbers." *Id.* at 9 - 10. Finally, Plaintiff asserts that he "meets or equals listing level disability." *Id.* at 10 - 11.

The Commissioner's response makes repeated references to Plaintiff's arguments supporting the foregoing claimed error as "skeletal." [Doc. No. 13, pp. 4, 5, 6, and 8]. The undersigned concurs in this assessment. Plaintiff's failure to develop the factual – and legal – bases for his arguments is, as the Commissioner urges, sufficient to reject certain of his claims. *See Threet v. Barnhart,* 353 F.3d 1185, 1190 (10th Cir. 2003) (finding appellate argument insufficiently developed and declining to speculate on appellant's behalf); *Effinger v.Callahan*, No. 97-7001, 1997 WL 446724, at *2 (10th Cir. Aug. 6, 1997) (unpublished op.) (the court will not comb through the record where counsel has not provided specific references tied to an argument) (citing *SEC v. Thomas*, 965 F.2d 825, 827 (10th Cir. 1992)). Nonetheless, after considering the arguments in Plaintiff's opening brief in conjunction with his reply brief – in which he had the opportunity to refute various assumptions made in the Commissioner's response brief – the undersigned finds that Plaintiff's arguments can, for the most part, be reached on their merits.

**Analysis**

The ALJ determined that Plaintiff – forty-five years old, with a high school education and with a variety of past relevant work, most recently as a shipping and receiving clerk – was severely impaired by status post tendon and traumatic injury to his hands; status post disc disease; major depression; and, status post polysubstance abuse [Tr. 17, 365 - 366, and

4

376]. Following his review of the medical and opinion evidence of record, and after determining that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely credible," [Tr. 20], a finding *not* challenged in this appeal, the ALJ concluded that

> [Plaintiff] has the residual functional capacity to perform a wide range of light work. Light work involves lifting or carrying a maximum of 20 pounds. The claimant's ability to perform a full range of light work is compromised as he can perform frequent handling and fingering, and he has the ability to remember and carry out very short and simple instructions and carry out simple routine tasks. The claimant has the ability to perform simple, unskilled 1 to 2 step repetitive tasks.

[Tr. 18].

In assessing Plaintiff's residual functional capacity ("RFC"),[2] the ALJ relied on the opinions of the State agency medical consultants who concluded that Plaintiff retained the ability to perform light work [Tr. 24 ]. The limitation to light work was also informed by the ALJ's finding that Plaintiff "has some back pain." [Tr. 25]. The ALJ credited Plaintiff's mental disorder by limiting him to the performance of simple, unskilled one to two step repetitive tasks. And, although the State agency medical consultants – relying on the consultative examining physician's grip and muscle strength and manipulation findings [Tr. 203] – found that Plaintiff had established no manipulative limitations [Tr. 198], the ALJ found that Plaintiff has "some limited ability for handling and fingering," [Tr. 25], and reduced that capability from constant to frequent.

---

[2]Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

5

**Vocational Evidence**

The only specific claim of error advanced by Plaintiff in connection with the ALJ's RFC assessment relates to a hypothetical question put to the vocational expert at step five of the sequential process. Plaintiff generally argues that "the hypotheticals posed to him never adequately outlined the claimant's residual functional capacity. Therefore, the Commissioner's burden of proving that [Plaintiff] could access other jobs that exist in significant numbers fails." [Doc. No. 12, p. 9]. Specifically, Plaintiff states that "[t]he most significant failure is the evidence regarding claimant's residual functional capacity in fingering . . . [and that Plaintiff] has significant fingering limitations that are supported by objective medical evidence." *Id.* at 10.

Plaintiff's opening brief, however, does not direct the court to any such objective evidence [Doc. No. 12]. Instead, Plaintiff cites to his own testimony at the administrative hearing where he stated that he was in a car accident where he hurt both of his hands; that he had a plate in his left hand; that his left hand was very painful with use; that his right hand thumb tendon was lacerated, making it become sore easily with use and causing difficulty with holding a pen or doing anything requiring dexterity. *Id.* at 3. Plaintiff adds in his reply brief that the car accident occurred in 1997; that the plate was placed in his left hand due to fractures; that he was prescribed narcotic pain medication in 1999; that he continued to receive treatment and medication for his hands; and, that the results of a January, 2000

6

electromyogram were consistent with bilateral carpal tunnel syndrome [Doc. No. 14, pp. 1 -2].[3]

In his decision, the ALJ noted Plaintiff's accident and his subjective complaints of pain and hand limitations [Tr. 19 - 20]. The ALJ determined that Plaintiff had "some limited ability for handling and fingering," [Tr. 25], and thus restricted his RFC to only frequent handling and fingering [Tr. 18]. In so doing, the ALJ specifically relied on the results of Plaintiff's June, 2005 consultative examination [Tr. 20 - 21]. There, the examining physician evaluated Plaintiff's grip strength at 4/5 bilaterally, "noticed excellent muscle strength," and found no paralysis [Tr. 188]; he also determined that Plaintiff could effectively oppose his thumb to his finger tips, could manipulate small objects, and could effectively grasp tools such as a hammer [Tr. 193]. The ALJ rejected as non-credible Plaintiff's subjective claims of total disability resulting from his hand limitations [Tr. 23 - 25], a credibility assessment that has not been questioned on appeal.

The ALJ's determination that Plaintiff can perform frequent fingering and handling is supported by substantial evidence of record. Thus, the hypothetical question posed to the vocational expert that included a limitation to frequent fingering and handling is backed by evidentiary support [Tr. 382]. The two jobs identified by the vocational expert and the ALJ as consistent with the hypothetical – patching-machine operator and tumbler tender – evidence the fact that Plaintiff's retains the capacity to perform work existing in significant

---

[3]Plaintiff's reply brief refers to the Exhibit 1 records of Dr. Kravitz, [Tr. 145 - 175], dated from August 10, 1999, through October 24, 2000 [Doc. No. 14, p. 2].

7

numbers in the national economy, and the Commissioner has met his burden at step five [Tr. 26 and 382 - 383]. *See* 20 C.F.R. §§ 404. 1560(c)(2); 416.960(c)(2).

**Medical-Vocational Guidelines**

Plaintiff is factually mistaken in asserting that the ALJ applied the so-called grids in the face of Plaintiff's non-exertional impairments [Doc. Nos. 12, pp. 7 - 8 and 14, p. 8]. The ALJ – who explicitly recognized that application of grid Rule 202.21 would only be proper if Plaintiff could perform the *full* range of light work – referenced the grids merely as a framework, relying instead on vocational evidence to support his step five determination [Tr. 26]. *See* Social Security Rulings 83-12, 1983 WL 31253, and 83-14, 1983 WL 31254. No error was committed by the ALJ in this regard.

**Asserted Error at Step Three**

Plaintiff's complete argument in support of his final proposition of error provides:

> At step 3 in the 5 step evaluation process, the ALJ failed to consider competent evidence on claimant's meeting or equaling listing level severity. The ALJ did not provide any reasoning for disregarding the report of Claimant's treating psychiatrist Dr. Surinder Randhawa, which was dated June 1, 2006, which found that Claimant could not work.
>
> The ALJ stated that he had read Claimant's Brief and that the facts were consistent with the record but did not take the required action to follow recommendations of the treating psychiatrist or to fully develop the record by having the presence of a medical expert to give testimony on medical equivalency.
>
> It is a denial of due process and equal access to justice for an ALJ to make a determination that a claimant does not "equal a listing" when there is no direct testimony or evidence of a medical expert to support such a finding.

[Doc. No. 12, pp. 10 - 11].

Plaintiff offers further explanation for this claim of error in his reply brief where he argues, in part, that

> [t]he failure of the ALJ to recognize [Plaintiff's] depression and pain in combination with his strength limitations resulted in error at step 3.
>
> The finding by the ALJ that [Plaintiff's] depression does not meet listing requirement under 12.04 does not preclude the possibility that this existing severe impairment could reduce or eliminate many job classifications with the small number of jobs precluded in the ALJ's findings, this should have totally eliminated all jobs.

[Doc. No. 14, p. 8].

It is difficult to follow Plaintiff's "listing level disability" argument [Doc. No. 12, p. 10]. While it is initially couched as asserting error at step three of the sequential process where the ALJ is charged with determining whether Plaintiff has an impairment or impairments that meet or equal a listed impairment, *see* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii), it concludes by citing to the Tenth Circuit's opinion in *Hargis v. Sullivan,* 945 F.2d 1482 (10th Cir. 1991) and its determination that the ALJ must continue – at steps four and five – to consider the effects of a mental impairment even if the impairment does not meet the listings. *Id.* at 1491. Accordingly, each of Plaintiff's specific arguments – regardless of applicable sequential step – is addressed in the order raised.

First, there is no question that the ALJ evaluated whether Plaintiff had an impairment or impairments that meets or medically equals a listed impairment:

> The undersigned has considered the listings in general and specifically considered the listing musculoskeletal listings and mental disorder listings and finds no evidence to support the claimant has an impairment or combination of impairments of severity to meet a listed impairment. The claimant has a

> history of two traumas: a motor vehicle accident in 1997 and a piano accident in 1999 when a piano fell on him. At his consultative examination in June 2005, he forward flexed to 80 degrees and extended to 10 degrees. Straight leg raising was negative bilaterally. The claimant was able to get on/off the examining table without assistance. The claimant was able to hell/toe walk, and his gait was normal in speed, safety, and stability. The claimant was released to work in April 2005 with a 40 pound lifting restriction. The claimant was noted to have 4/5 grip strength and excellent muscle strength with no atrophy at his consultative examination in June 2005. There is no evidence to indicate the claimant is unable to perform fine and gross movements effectively as required by the musculoskeletal listings. The claimant began treatment for depression in March 2005. He had lost his job and was about to go through a divorce and was in a lot of physical pain. There is some suggestion of a history of marijuana and alcohol use (5 previous DUIs). The claimant has above average intelligence and fair insight. The claimant was diagnosed with major depressive disorder, severe without psychotic features; and polysubstance abuse not otherwise specified. He was prescribed Zoloft and Trazodone. At his physical consultative examination in June 2005, his mood and affect were normal, memory was intact, and there was no suicidal/homicidal ideation. The claimant's activities of daily living include getting his daughter ready for school, spending time with family and friends, playing board games, and attending church. The claimant was assessed with mild restrictions of activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace and no episodes of decompensation. Evidence does not establish the presence of the "C" criteria. There is no evidence that the claimant has an impairment or combination of impairments, which meets a listed impairment.

[Tr. 18]. The only non-conclusory evidentiary argument by Plaintiff – whose reply brief implicitly acknowledges [Doc. No. 14, p. 8] that the Commissioner correctly argued that §12.04 was the listed impairment Plaintiff claimed to be met or medically equaled [Doc. No. 13, p. 6] – with regard to the ALJ's step three analysis is that "[t]he ALJ did not provide any reasoning for disregarding the report of Claimant's current treating psychiatrist Dr. Surinder

Randhawa, which was dated June 1, 2006, which found that Claimant could not work." [Doc. No. 12, p. 10].

To the contrary, while the ALJ specifically found that North Care Center's Dr. Randhawa and Dakota Hamilton, MHR, Plaintiff's case manager,[4] had both opined that Plaintiff was not able to work at this time, he declined to give such opinions controlling or significant weight because they were inconsistent with contemporaneous progress notes and the medical evidence as a whole [Tr. 24, 339, and 340]. As to the progress notes, the ALJ reviewed Plaintiff's treatment history at North Care in 2005, noting that he had been found to be medication compliant, that he had reported no side effects or suicidal/homicidal ideations, that he exhibited no involuntary movements, that he was neat and clean, had normal speech and mood, had appropriate affect, intact thought, no delusions or hallucinations, was cooperative, and had normal sleep and appetite in May and August, 2005 [Tr. 24].

The undersigned's review of the record reveals that Plaintiff saw Dr. Randhawa on April 19, 2005, for an initial psychiatric evaluation [Tr. 289 - 291]. The psychiatrist reported that Plaintiff's hygiene was "not very good," his mood was depressed, his psychomotor activity was low, his speech was slow, his insight was partial, and his judgment was fair. *Id.* Medications were prescribed [Tr. 292]. On May 5, 2005, Dr. Randhawa indicated that

---

[4]Plaintiff does not assert that the ALJ erred in connection with his analysis of the opinion offered by Plaintiff's case manager at North Care [Doc. Nos. 12, pp. 10 - 11 and 14, pp. 7 - 8] and, consequently, has waived any such claim.

Plaintiff was neat and clean, had appropriate speech, mood, and affect, and had intact thought [Tr. 281]. She reported that his sleep was decreased and that his appetite was both increased and decreased. *Id.* On August 16, 2005, there were no changes apart from an indication of normal sleep and appetite [Tr. 237]. No further treatment records by Dr. Randhawa appear of record. Almost a year later, on June 1, 2006, Dr. Randhawa wrote a "To Whom It May Concern Letter" stating that she was Plaintiff's attending psychiatrist who "help[s] him as he recovers from and adjusts to what has been diagnosed as a mental disorder." [Tr. 339]. She concluded that "[h]e is not able to work at this time do to his condition and will be re-evaluated in 90 days." *Id.*

The ALJ's finding that Dr. Randhawa's opinion is inconsistent with contemporaneous progress notes is well-supported. Not only are there no progress notes for almost a year before the opinion letter was written, but the few progress notes generated by Dr. Randhawa prior to that time do not support the physician's conclusion. To the contrary, the sparse notes indicate an improvement in Plaintiff's functioning.

Likewise, the ALJ's conclusion that Dr. Randhawa's opinion is inconsistent with the medical evidence as a whole finds support in the record [Tr. 24]. As the ALJ indicated, *id.,* a consultative examining physician reviewed Plaintiff's mental status in June, 2005, finding him to be appropriately dressed, his mood and affect normal, his short and long-term memory to be intact, his intelligence to be slightly above average, and his judgment, insight, and capability to be intact [Tr. 188].

Moreover, as the Commissioner correctly maintains, a statement that a claimant is disabled or unable to work is not entitled to controlling weight or special significance [Doc. No. 13, p. 6]. As explained by Social Security Ruling ("SSR") 96-5p, 1996 WL 374183, "[m]edical sources often offer opinions about whether an individual who has applied for title II or title XVI disability benefits is 'disabled' or 'unable to work,'" or make similar statements of opinions." *Id.* at *5. An opinion that a claimant is unable to work or is disabled is not a medical opinion. *See* 20 C.F.R. §§ 404.1527(e), 416.927(e). Rather, it is an opinion on an issue reserved to the Commissioner because it is a case-dispositive administrative finding. *Id.* In other words, as the regulation explains, such a finding "would direct the determination or decision of disability." *Id.* The Administration's ruling, however, cautions that "[s]uch opinions on these issues must not be disregarded. However, even when offered by a treating source, they can never be entitled to controlling weight or given special significance." SSR 96-5p, 1996 WL 374183, at *5. The ALJ committed no error in his analysis of the "To Whom It May Concern Letter" from Dr. Randhawa.

Plaintiff's next specific claim of error is as follows:

> The ALJ stated that he had read Claimant's Brief and that the facts were consistent with the record but did not take the required action to follow recommendations of the treating psychiatrist or to fully develop the record by having the presence of a medical expert to give testimony on medical equivalency.
>
> It is a denial of due process and equal access to justice for an ALJ to make a determination that a claimant does not "equal a listing" when there is no direct testimony or evidence of a medical expert to support such a finding.

13

[Doc. No. 12, pp. 10 - 11]. Plaintiff, however, fails to support this conclusory argument with citation to any case law, Social Security regulation, or Social Security ruling, and, as such, it is waived.

The final specific argument raised by Plaintiff with regard to alleged error at step three is actually a claim that the ALJ erred at steps four and five. It is Plaintiff's contention that "[t]he failure of the ALJ to properly evaluate [Plaintiff's] impairments are similar to the ALJ's failure in Hargis v. Sullivan, 945 F.2d 1482 (1991)." [Doc. No. 14, p. 7]. Plaintiff then quotes from that portion of *Hargis* where the court concluded that a finding that a mental impairment does not meet a listing does not end the inquiry. *Id.* at 1488. Rather, the court found that "once a mental impairment is considered to be severe, it must be included in the residual functional capacity assessment." *Id.* Here, the ALJ *did* continue to consider Plaintiff's severe mental impairment in combination[5] with his other impairments at the remaining two steps in the prescribed analysis. The ALJ restricted Plaintiff's RFC[6] by limiting him to the performance of simple, unskilled one to two step repetitive tasks [Tr. 18], a limitation that was included in the fourth hypothetical question to the vocational expert that elicited the evidence of the two jobs the ALJ found Plaintiff remained capable of performing

---

[5]The ALJ must "consider the combined effect of all of [a claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. §§ 404.1523, 416.923.

[6]The ALJ also specifically considered Plaintiff's hand and back pain in further limiting his RFC [Tr. 25].

14

– patching-machine operator and tumbler tender [Tr. 26 and 382 - 383]. Plaintiff has failed to demonstrate that any error was committed in this regard.

## **RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT**

For the foregoing reasons, the undersigned recommends that the Commissioner's decision be affirmed. The parties are advised of their right to object to this Report and Recommendation by April 29, 2010, in accordance with 28 U.S.C. §636 and Fed. R. Civ. P. 72. The parties are further advised that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 9th day of April, 2010.

_____
BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE